IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHNNY CYRUS,                          :        CIVIL ACTION NO. **4:CV-08-1085**
                                       :
              Plaintiff                :        (Judge McClure)
                                       :
       v.                              :        (Magistrate Judge Blewitt)
                                       :
                                       :
R. LAINO, et al.,                      :
                                       :
              Defendants               :

## REPORT AND RECOMMENDATION

### I. Background.

Plaintiff, Johnny Cyrus, an inmate at the Federal Correctional Institution at Allenwood, White Deer, Pennsylvania ("FCI-Allenwood"), filed, *pro se*, the instant *Bivens*[1] civil rights action, pursuant to 28 U.S.C. § 1331[2], on June 6, 2008. (Doc. 1). The Plaintiff has also filed an application for leave to proceed *in forma pauperis*. (Doc. 2). Attached to the form Complaint are two handwritten pages of the Statement of Facts. Plaintiff Cyrus is a frequent litigator in this Court.[3]

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971).

[2] Plaintiff incorrectly indicates that his present action is being filed jointly under both § 1331 and under § 1983. (Doc. 1, p. 1). However, a § 1983 civil rights suit is against state officials and not federal officials of the Bureau of Prisons ("BOP"), as Plaintiff is naming as Defendants in this case. *See Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).

[3] Plaintiff Cyrus has filed eight other actions with this Court, namely Civil Nos. 02-0845, 06-2022, 06-2265, 06-1698, 06-1665, 06-1697, 06-2052, and 06-2051, M.D. Pa. Two of these cases have been dismissed as frivolous, namely 02-0845 and 06-2052, M.D. Pa. The other six actions which Plaintiff has filed with this Court have all been closed.

**II. Allegations of Complaint.**

Plaintiff's claim was set forth, in part, on a form civil rights complaint which this Court routinely provides to *pro se* litigants. *See* Doc. 1.[4] As stated, Plaintiff has attached two handwritten, single spaced pages to his form Complaint. Plaintiff names as Defendants Health Services Administrator ("HSA") R. Laino, MTPN Weidlich, Corrections Officer ("CO") Rasirio, CO Groover, CO Dorman, and Lt. Bryant. (Doc. 1, pp. 1-2). All Defendants are employed by the BOP at FCI-Allenwood.

Plaintiff claims that on December 8, 2006, unnamed prison staff violated his civil rights "by attempting to murder him as he law (sic) [lay] in his cell asleep by running into his cell, holding his head down, while [staff were] screaming, hollering that 'you are filing on my medical staff, [i]f I leave this in your nose, your brain will turn into oatmeal," at which point Plaintiff alleges he lost consciousness. (Doc. 1, p. 3). Plaintiff avers that he was "maliciously, nefariously, capriciously, arbitrarily, willfully, spitefully, and sardonically and unlawfully attacked by medical staff and correctional officers." (*Id.*). He recalls seeing the following medical staff members and CO's as the persons who stormed into his SHU "handicapped cell," namely three staff members whom he names as Defendants, R. Laino (Health Service Administrator), MTPN Weidlich and CO Rasirio. Plaintiff alleges that as other unnamed prison staff also stormed into his cell, but he does not know their names. (*Id.*). Plaintiff claims that the three stated prison staff member Defendants stormed

---

[4]Plaintiff indicates that he has exhausted all of his administrative remedies with respect to his present claims. (Doc. 1, p. 1, ¶ II.).

into his cell, stuck an object up his nose, and rendered him unconscious as retaliation, in violation of the First Amendment, due to the filing of his grievances and his civil rights complaints against the prison medical staff for denying him proper medical care. Plaintiff avers that he struggled with the stated three Defendants and the other unnamed staff members, but the unknown object they stuck up his nose caused him to become unconscious. Plaintiff states that the alleged conduct by Defendants Laino, Weidlich and Rasirio violated his rights under the First Amendment, Fifth Amendment, and Fourteenth Amendment, as well as violated BOP policies and regulations under 28 C.F.R., the Administrative Procedure Act ("APA"), 5 U.S.C., and 18 U.S.C. § 4042. (*Id*.).

After the alleged nose assault incident, Plaintiff avers that he awoke "in the clinic on a strectfor (sic) with an IV. (intravenous tube) ... in my hand and a (sic) oxygen mask over my face." (*Id*.). Plaintiff was allegedly informed by a C.O. that he "was not breathing when they brought [him] over here to the clinic." (*Id*.). Plaintiff then claims his "chest and stomack (sic) was in acute, severe, excruciating and debilitating pain," and that it felt like he was "hit with electricity because [he] was hot, numb and burning and it felt like someone was pumping [his] stomach," which he equates to the feeling he had "in 2001 after having a heart atteck (sic) and doctors had to use electrifying pads to start my heart back to pumping ... ." (*Id*.). Plaintiff states this previous heart attack in 2001 is the reason he takes Nitroglycerine pills. (*Id*.). Plaintiff claims that once the IV ran out, he "was taken back to his cell in SHU in severe, acute excruciating and debilitating pain and suffering." (*Id*.).

At this time, Plaintiff alleges he requested medication for his pain and Defendant Laino allegedly remarked "handle it." (*Id*.). Plaintiff then clams that Defendant Laino "snatched my bottle of Nitro[glycerin] pills from around my neck and spitefully, sardonically, maliciously, arbitrarily (sic),

nefariously, wantonly, deliberately, recklessly and with retaliatory hostile animus remarked, 'don't have any more heart attacks,' laughed and left my cell." (*Id*.).

Plaintiff states that the alleged conduct by Defendant Laino violated his Eighth Amendment rights by subjecting him to unnecessary pain and suffering and by increasing the "risk to my life should I have another heart attack." (*Id*.).

Plaintiff also alleges that on December 9, 2006, Defendant CO Dorman refused to give him his food tray while he was working the 6 a.m. to 2 p.m. shift, and that this violated BOP regulations under 28 C.F.R. § 541.20-21 and 18 U.S.C. §4042.  Plaintiff claims that Defendant Dorman's conduct was in retaliation for the civil rights suit Plaintiff filed against him in case #06-1665, M.D. Pa.  (*Id*.).[5]  Plaintiff avers that Defendant Dorman  told him that "I have orders from the Lieutenant Bryant, not to give you anything to EAT." (*Id*., p. 3).  Plaintiff states that on the 4 p.m. to 12 a.m. shift the same day, Defendant Groover told him that Lt. Bryant ordered him [Defendant Groover] not to give Plaintiff any food.  Further, on the same day, Plaintiff states that Defendant CO Rasirio refused to give him a food tray.  (*Id*.).

Thus, Plaintiff claims that on three occasions on December 9, 2006, he was denied food by Defendant Officers Dorman, Grover, and Rasirio, under direct orders of Defendant Lieutenant Bryant.  (Doc. 1, pp. 3-4).  As mentioned, Plaintiff states that Defendant Officer Dorman "was already being sued by grievant (sic) [Plaintiff] in case no. 4:CV-06-1665." (Doc. 1, p. 3).  Two days later, December 11, 2006, Plaintiff alleges he awoke in a crowded cell with "everyone talking at

---

[5]As noted above, Plaintiff's case filed to #06-1665, M.D. Pa. was previously dismissed, namely on July 26, 2007.

the same time and Captain Feltman was yelling, 'cyrus, are you alright, can you hear me, this is

Captain Feltman, we're here for your safety to make sure you are alright." (Doc. 1, p. 4).  Plaintiff

then claims:

> [t]here were at lkeast (sic) ten people in my cell, which alarmed tme (sic) to
> the fact that something serious had happened to me due to all the top level
> officials in my cell attempting to check on me...And it was at that moment
> that everything started coming together for me, and why I was feeling the
> severe, acute, excruciating pain in my chest, stomach, and head in
> cununction (sic) with what the officer at the door of my hospital cell stated
> when I awoke and pulled mask off my face, that these people herein named
> and unnamed attempted to murder me and had to use electric pads to start
> my heart back up and beating on December 8, 2006.

(Doc. 1, p. 4).

Plaintiff avers that he informed Warden Hogsten of the alleged attempted murder by her

staff, "custody and medical," on December 15, 2006, but she failed to address the situation

"outside of telling the SHU Lieutenant to release me from SHU as soon as possible, ten days before

my time was up." (*Id.*).[6]  Plaintiff states that  the Warden "breached her 'duty of care owed' by

failing to correct the unconstitutional and criminal actions, acts, omission, of he subordinates, which

she is bound by law to do and also encure (sic) that my rights are not violated." (*Id.*).  He also

claims that the "BOP officials purposefully, spitefully, nefariously and intentionally conspired to

deprive me of my civil rights to live." (*Id.*).  Plaintiff further claims that "they all breached their duty

of care owed by attempting to murder grievnat (sic) [Plaintiff] for seeking administrative and judicial

recourse, clearly, while grievant was already involved in a "Constitutionally KProtected (sic) activity"

---

[6]Unlike several of Plaintiff's other actions filed with this Court, Plaintiff does not name
Warden Hogsten as a Defendant in the instant case.

in furtherance of the conspiracy." (*Id*.).  Plaintiff further claims that these actions "exhibited Deliberate Indifference, Gross Negligence, and a Criminally Reckless disregard for grievent's [Plaintiff's] life, health, well-being and welfare." (*Id*.).

Plaintiff concludes as follows:

> These officials were definitely operating outside the scope of their official discretionary duties and their actions were not done to accomplish and or implement any governmental, penalogical objective or security concern, it was personal, induced by the hostile, retaliatory animus, harbored by these officials because I exercised my right to seek redress.

(*Id*.).

As relief, Plaintiff seeks compensatory and punitive damages as well as termination of the Defendant BOP officials.  (Doc. 1, p. 4).   Plaintiff also requests money damages for pain and suffering as well as for mental anguish.  (*Id*., p. 5).[7]

## III.  PLRA.

We now screen the Plaintiff's pleading  under 28 U.S.C. §1915(e)(2)(B), and find that it fails to state a cognizable Fifth, Fourteenth, and First Amendment Retaliation as against Defendants Weidlich, Rasirio, Groover, Dorman and Bryant.  We find that Plaintiff has stated an Eighth

---

[7]The law is clear that an inmate cannot recover for emotional injury if no physical harm is stated.  Plaintiff alleges that the prison staff stuck an object up his nose which caused him to become unconscious. (Doc. 1, p. 3). Plaintiff seeks money damages for  mental anguish. (Doc. 1, p. 5).  In this case, Plaintiff's claim of physical harm of "slip[ping] into a state of unconsciousness" may be sufficient to amount to the requisite harm necessary to seek damages for mental injury.  Money damages for Plaintiff's mental anguish would be precluded if he has not sufficiently alleged physical  injury.  *See* 42 U.S.C. § 1997e(e).  The law is clear that an inmate may not file a federal civil rights action based on a claim of mental or emotional injury seeking compensatory damages without any prior showing of physical injury.  *Allah v. Al-Hafeez*, 226 F.3d 247, 250-251(3d Cir. 2000).

Amendment claim against Defendant Laino for his alleged failure to treat Plaintiff's pain and for his alleged taking of Plaintiff's nitroglycerin medication.  We find that Plaintiff also states an Eighth Amendment excessive force claim as against Defendants Laino, Weidlich and CO Rasirio.[8]  Plaintiff alleges that these three Defendants stormed into his cell due to his prior civil rights complaints against prison staff for failure to give him proper medical care, and that they stuck an object up his nose which caused him to become unconscious.  Plaintiff claims that this conduct violated his Eighth Amendment rights, as well as his rights under the First Amendment, the Fifth Amendment, and the Fourteenth Amendment, along with the APA, BOP regulations and federal statute.  While we find that Plaintiff has stated an Eighth Amendment excessive force claim against Defendants Laino, Weidlich and CO Rasirio, we do not find that he states any claim under the First Amendment, Fifth Amendment, and Fourteenth Amendment.  Further, Plaintiff cannot base a Constitutional claim on violations of BOP policy, the APA and §4042.  Plaintiff must assert any claims for breach of duty of care owed to him by prison staff as an FTCA claim against the United States after he exhausts his tort claim remedies with the BOP.  Moreover, we do not find that the alleged denial of Plaintiff's three food trays on December 9, 2006, by Defendants Dorman, Groover and Rasirio under orders of Defendant Lt. Bryant states an Eighth Amendment conditions of confinement claim.

As stated, the Plaintiff has filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  The Prison Litigation Reform Act of 1995,[9] (the "PLRA"), obligates the Court to

---

[8]Plaintiff spells this Defendant's name as both "Rosirio" and "Rasirio."

[9]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28

U.S.C. § 1915.[10]   Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act,

provides:

> (2) Notwithstanding any filing fee, or any
> portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the
> court determines that (A) the allegation of
> poverty is untrue; or (B) the action or appeal
> (i) is frivolous or malicious; (ii) fails to
> state a claim on which relief may be granted;
> or (iii) seeks monetary relief against a
> defendant who is immune from such relief.

## IV.  Section 1331  Standard.

Under *Bivens*, the District Court has federal question jurisdiction pursuant to 28 U.S.C.

§ 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations

by a federal actor under *Bivens, supra*. Pursuant to *Bivens*, "a citizen suffering a compensable injury

to a constitutionally protected interest could invoke the general federal question jurisdiction of the

district court to obtain an award of monetary damages against the responsible federal official." *Butz*

*v. Economou*, 438 U.S. 478, 504 (1978).  A *Bivens*-style civil rights claim is the federal equivalent

of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held

to apply.  *See, Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp.

1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992).

---

[10]The Plaintiff completed an application to proceed *in forma pauperis* and authorization to have funds deducted from his prison accounts.  The court then issued an administrative order directing the warden to commence deduction of the full filing fee due the court from the Plaintiff's prison trust fund account.  (Docs. 2, 3 and 4).

In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Young v. Keohane*, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992).

**V.  Motion to Dismiss Standard.**

In considering whether a pleading states an actionable claim, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988).  A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).

A Complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   The Court uses the same standard of review under 28 U.S.C. §1915(e)(2)(B) as a Rule 12(b)(6) motion. *Grayson v. Mayview State Hosp.*, 293 F. 3d 103, 110 (3d Cir. 2002); *Sharpe v. Costello*, 2007 WL 1098964, *3 (M.D. Pa. 2007).

**VI.  Discussion.**

*A.  Claims under the APA, BOP Policies and Section 4042*

Plaintiff claims the conduct of Defendants HSA Laino, Weidlich and CO Rasirio by storming into his cell and putting an object up his nose as retaliation for his civil rights suits against prison staff

was "in direct contravention to these officials ... regulations, statutes and policies ... pursuant to Title 5 U.S.C. of the Administrative Procedure Act (APA) [and] Title 28 Code of Federal Regulations ... Title 18 U.S.C. § 4042... ."  (Doc. 1, p. 3).

We find BOP policies and regulations do not provide a property interest to Plaintiff because the policies are for internal BOP use and do not confer any constitutional right to an inmate.

A policy manual does not have the force of law and does not rise to the level of a regulation. *Mercy Catholic Med. Ctr. v. Thompson,* 380 F.3d 142, 154 (3d Cir. 2004).  The Third Circuit clearly stated "that the agency interpretive guidelines do not give rise to the level of a regulation and do not have the effect of law." *Id*.  Further, a violation of an internal policy does not automatically rise to the level of a Constitutional violation. *Whitcraft v. Township of Cherry Hill,* 974 F.Supp. 392, 398 (D.N.J. 1996)(citing *Daniels v. Williams,* 474 U.S. 327, 332-33, 106 S.Ct. 662, 665-66, 88 L.Ed.2d 662 (1986); *Edwards v. Baer,* 863 F.2d 606, 608 (8th Cir.1988); *Jones v. Chieffo,* 833 F.Supp. 498, 505-506 (E.D.P.a.1993)).  While §4042 provides that the BOP owes a duty of care to the inmates which it confines, we find that Plaintiff must assert any negligence claim against prison staff for a § 4042 breach of duty care claim under the FTCA since a negligent claim cannot be the basis for a §1331 civil rights action.

The FTCA, and not a *Bivens* action, is for claims against employees of the United States for money damages with respect to a negligence claim for violating a duty of care.  *See* Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 and § 2680.  *See also Banks, supra*, 2007 WL 1574771,

*7.[11]  Further, Plaintiff must exhaust his administrative remedies with the BOP by filing a tort claim (SF-95) prior to filing an FTCA action in District Court.[12]  *Id.*, slip op. p. 5, 2007 WL 3096585, * 2.

Further, to the extent that  Plaintiff claims a violation of 18 U.S.C. § 4042  (Doc. 1, p. 3), as the Court stated in *Baker v. U.S.*, 2006 WL 3717382 *7 (W.D. Pa.), "[a]lthough the prison officials of the United States have a statutory duty[13] to protect inmates from harm, decisions regarding the best way to safeguard prisoners and the safety of the institution are discretionary in nature and do not provide subject matter jurisdiction to this Court for negligence claims against the United States.  The government's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) should be granted as to Plaintiff's failure to protect claim as this Court lacks subject matter jurisdiction over  it."

---

[11]The Third Circuit in  *Banks v. Roberts*  noted, "The District Court correctly construed Banks' negligence claim under the FTCA, noting that it could not consider his negligence claim under *Bivens*, because negligence is not the basis of a constitutional claim.  *See Bivens*, 403 U.S. at 392 (recognizing an implied private action for damages against federal officers alleged to have violated a citizen's *constitutional* rights)." 2007 WL 3096585, * 2, n. 4 (3d Cir.)(emphasis original).

[12]The provisions of the FTCA govern all claims against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment.  28 U.S.C. §2675 (a).  Plaintiff here is seeking damages for the alleged breach of the BOP's statutory duty of care.   With respect to any FTCA claim, the only proper party Defendant is the United States, and not the federal agency, *i.e.*, the BOP.   *See* 28 U.S.C. §2679 (b) and (d)(1).  Thus, the BOP cannot be named as a Defendant in an FTCA action, and only the United States can be named as Defendant.  *See Banks, supra*,  2007 WL 3096586, * 2.

[13]Title 18 U.S.C. § 4042(a)(2), (3) provides: "The Bureau of Prisons ... shall ... provide ... for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States ... [and] provide for the protection ... of all persons charged with or convicted of offenses against the United States."

Based on *Baker*, we will recommend that the  Court dismiss Plaintiff's claim under § 4042 based on lack of subject matter jurisdiction.   *See also Banks, supra*.

In addition, we find the language of the BOP policies and regulations do not afford an inmate Constitutional rights.   Plaintiff seems to contend that the BOP policies and regulations create a property interest and that by allegedly violating these policies and regulations, Defendants violated his due process rights under the Fifth Amendment and Fourteenth Amendment.  As stated, violations of BOP policies do not rise to the level of a Constitutional claim.

We also find Plaintiff has not stated a recognizable Fifth Amendment Due Process claim. (Doc. 1, p. 3).   Plaintiff claims that the alleged conduct by Defendants deprived him of his right to be free from harm and injury in prison.   Plaintiff also claims that the prison staff "conspired to deprive me of my civil rights to live." (Doc. 1, p. 4).   As discussed above, based on the alleged violations of the cited BOP policies and regulations as well as § 4042, we do not find that Plaintiff has stated any Constitutional claim.   Further, insofar as Plaintiff claims Defendants violated his rights under the Fourteenth Amendment, this amendment  provides, in pertinent part, "No *State* shall ... deprive any person of life, liberty, or property, without due process of law ...." *U.S. Const. amend. XIV*.  (emphasis added).   Since this action is arising from occurrences in a federal prison alleging violations of Constitutional rights by federal officials,  the Fourteenth Amendment does not apply and we will recommend Plaintiff's claims under the Fourteenth Amendment be dismissed.  *See Brown v. Wigin*, 1995 WL 376482, * 2 (E.D. Pa.) ("the Fourteenth Amendment applies to state not federal actors.").

B. *Eighth Amendment Claims*

   i. *Conditions of Confinement*

While "[t]he Constitution 'does not mandate comfortable prisons,' ... neither does it permit inhumane ones...." *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970 (1994)(quoting *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, (1981)). "[I]t is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.' " *Farmer,* 511 U.S. at 832, 114 S.Ct. 1970 (quoting *Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475 (1993)). Under *Farmer*, conditions of confinement will violate the Eighth Amendment if the following two-prong test is met: (1) the deprivation is sufficiently serious; and (2) deliberate indifference by the prison official Defendants. *Id*. at 834. Stated simply, an Eighth Amendment violation exists when the prisoner is denied "the minimal civilized measure of life's necessities" and the prison official acted with recklessness. *Farmer,* 511 U.S. at 834-35 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392); *Wilson v. Seiter,* 501 U.S. 294, 303, 111 S.Ct. 2321 (1991). In order to find an Eighth Amendment violation regarding conditions of confinement, the evidence must show that the prison official was "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837. Plaintiff makes no such claim as to Defendants Rasirio, Groover, Dorman and Bryant insofar as he alleges that these four Defendants deprived him of his food trays on one day.

Under the Eighth Amendment, any claims of cruel and unusual punishment must show that prison official have placed inmates in the position of having deprived them of one or more basic

human need.  *Helling v. McKinney*, 509 U.S. 25, 32, 1130 S.Ct. 2475.  To establish an Eighth

Amendment claim, the Plaintiff is required to show how the conditions of confinement create a

"substantial risk of serious harm" to his health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834, 114

S. Ct. 1970.  As this Court stated in *Brown v. Martinez*, 2007 WL 2225842, * 5 (M.D. Pa.):

> In reviewing this type of claim, the courts have stressed the duration of the
> complainant's exposure to the alleged unconstitutional conditions and the
> "totality of the circumstances" as critical to a finding of cruel and inhumane
> treatment.  Moreover, the focus must be on the deprivation of a particular
> necessity.  *See also Noble v. Beard*, 2007 WL 2907887 *4 (M.D. Pa.).

In *Brown*, this Court cited a Tenth Circuit case which stated, "[a] substantial deprivation of

food may be sufficiently serious to state a conditions of confinement claim under the E i g h t h

Amendment."  *Id.* (citing *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir.2002)).

The Plaintiff names the following Defendants as being involved in the alleged deprivation

of his meals on December 9, 2006: CO Rasirio, CO Dorman (6 a.m. to 2 p.m. shift), CO Groover

(4 p.m. to 12 a.m. shift), and Lt. Bryant.  (Doc. 1, pp. 3-4).  Plaintiff avers he was told by the three

corrections officers that Lt. Bryant ordered the alleged deprivation of his meals on the stated day.

 (*Id.* at 4).  However, based on the Complaint, Plaintiff's meals were only deprived for one day,

which does not constitute a "substantial deprivation of food" sufficiently serious enough to state an

Eighth Amendment conditions of confinement claim.  Thus, we will recommend that Plaintiff's

Eighth Amendment conditions of confinement claim be dismissed as against Defendants Rasirio,

Groover, Dorman and Bryant.

ii.  *Denial of Proper Medical Care*

We find that Plaintiff's Complaint does not sufficiently state the personal involvement of Defendants CO Groover, Lt. Bryant, CO Dorman, CO Rasirio and MTPN Weidlich  with respect to his Eighth Amendment claim that he was denied proper medical care on December 8, 2006 for his "debilatating (sic) pain" and that his prescribed nitroglycerin pills were taken from him by HSA Laino.  (Doc. 1, p. 3).  We do not find any specific allegations made as against Defendants CO Groover, Lt. Byrant, CO Dorman, CO Rasirio and Weidlich in Plaintiff's pleading regarding his Eighth Amendment claim for denial of proper medical care.  These Defendants are not  claimed to have played any role in the alleged denial of providing Plaintiff with proper medical care at FCI-Allenwood.  These Defendants are not alleged to have engaged in any conduct amounting to a violation of Plaintiff's Eighth Amendment Constitutional right to proper medical care.  There is simply no claim that Defendants CO Groover, Lt. Bryant, CO Dorman, CO  Rasirio and Weidlich were deliberately indifferent to the Plaintiff's serious medical needs, and thus his Eighth Amendment claim against these Defendants must fail.  We recognize that in the case of *Devern v. SCI-Graterford*, 2004 WL 1552000 * 1 (E.D. Pa.), the Court limited *Durmer v. O'Carroll,* 991 F.2d 64 (3d Cir.1993) and held that a "non-physician supervisor may be liable under § 1983 if he had knowledge or reason to know of medical mistreatment."  However, in our case, the Plaintiff does not assert that the stated five Defendants were actually present at the time the Plaintiff allegedly requested pain medication from Defendant Laino and he refused to give him any, and at the time Plaintiff had his nitroglycerin pills taken from him by Defendant Laino.

The Complaint does not sufficiently specify any conduct, wrongful or otherwise, of Defendants CO Groover, Lt. Bryant, CO Dorman, CO  Rasirio and Weidlich with respect to Plaintiff's Eighth Amendment denial of proper medical care claim.  These five Defendants are not alleged to have played any role in or to have been aware of the alleged denial of pain medication for Plaintiff and in the alleged taking of the Plaintiff's heart medication.  Therefore, we shall recommend that these Defendants be dismissed with respect to Plaintiff's Eighth Amendment denial of proper medical care claim.

The only Defendant alleged to have been personally involved with the refusal to give Plaintiff pain medication for his stomach ailment on December 8, 2006, and told Plaintiff to "handle it," and the only Defendant to have been personally involved with the taking of Plaintiff's nitroglycerin pills is Defendant HSA Laino.  According to Plaintiff, HSA Laino "snatched my bottle of Nitro pills from around my neck and ... remarked 'don't have any more heart attacks,' laughed and left my cell without my 'already prescribed heart medicine' egregiously increasing ... [the] risk to my life should I have another heart attack."  (Doc. 1, p. 3).  Plaintiff also alleges  that two days later (*i.e.* December 10, 2006), he suffered symptoms similar to a heart attack and that he had to have his heart started again by an electronic device.  (Doc. 1, p. 4).  While it is not clear if Defendant Laino returned  Plaintiff's heart medication prior to the December 10, 2006 incident, we find that Plaintiff has sufficiently stated a violation of his Eighth Amendment right to proper medical care with respect to HSA Laino.[14]

---

[14]We note that Defendant Laino may be statutorily immune from this *Bivens* suit, pursuant to the Public Health Services Act ("the Act"), 24 U.S.C. § 233(a)-(b), and the Plaintiff's claims for money damages based on the actions taken by him as a Health Services Administrator

acting within the scope of his employment, have as an exclusive remedy a suit against the United States in a Federal Tort Claim Act ("FTCA") action.  If the FTCA is the Plaintiff's remedy, then the United States must be substituted as the proper party Defendant in place of HSA Laino.  If the United States is substituted as the proper party Defendant in lieu of Defendant Laino, the Plaintiff's Constitutional claims as to Defendant Laino may be subject to dismissal since he cannot maintain a *Bivens* action against the United States.

Several courts have held that the FTCA is an inmate's sole remedy for injuries allegedly received by a Public Health Service employee acting within the scope of their employment. The Court in *Navarrete v. Vanyur*, 110 F. Supp. 2d 605, 606 (N.D. Ohio 2000), stated as follows with respect to not allowing a *Bivens* action against a PHS employee:

> In *Bivens*, the Supreme Court established a right for victims to recover damages for constitutional violations made by federal officials.  403 U.S. at 390-97, 91 S.Ct. 1999 (1971).  However, the high court made two exceptions to this cause of action.  *Id.* at 390-97, 91 S.Ct. 1999.  The exception pertinent to this case is that a *Bivens* action may not be maintained when "defendants show that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective."  *Carlson v. Green*, 446 U.S. 14, 18-19, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (citing 403 U.S. at 397, 91 S.Ct. 1999; *Davis v. Passman*, 442 U.S. 228, 245-47, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979)).
>
> The Public Health Service Act provides that an action against the United States under the Federal Tort Claim Act ("FTCA") is the exclusive remedy
>
>> for personal injury, including death, resulting from the performance of medical, surgical, dental or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment.
>
> 42 U.S.C. § 233(a).  Thus, Congress has expressly made the FTCA an inmate's sole remedy for injuries received by Public Health Service Officers acting within the scope of their employment. *See Lewis v. Sauvey*, 708 F.Supp. 167, 169 (E.D. Mich. 1989).  Two Sixth Circuit panels that have directly addressed this issue did not

*iii. Eighth Amendment Excessive Force Claim*

Plaintiff alleges that on December 8, 2006, Defendants Laino, Weidlich and CO Rasirio stormed into his cell and stuck an unknown object up his nose, which caused him to become unconscious and suffocating for air.  As a result, Plaintiff alleges that he woke up in the prison medical clinic with an intravenous tube (IV) in his hand and wearing an oxygen mask.  Plaintiff claims that the stated three Defendants attacked him due to his lawsuits he filed against the prison's medical staff.  We find that Plaintiff has stated an Eighth Amendment excessive force claim as against Defendants  Laino, Weidlich and CO Rasirio.

The Court in *Bright v. Gillis*, 89 Fed. Appx. 802, 805 (3d Cir. 2004), stated the factors in establishing an Eighth Amendment excessive force claim against prison staff:

---

> permit prisoners to pursue a *Bivens* actions (sic) against prison doctors for acts or omissions made while performing their official tasks, holding that the FTCA provides "the exclusive remedy in a civil suit that is brought against a Public Health Service Officer if the civil suit involved subject matter that is covered by the FTCA." *Beverly v. Gluch*, No. 89-1915, 1990 WL 67888 *1 (6th Cir. 1990); *see also Walls v. Holland*, No. 98-6506, 1999 WL 993765 (6th Cir. 1999) (holding that the FTCA offers the exclusive remedy for personal injuries resulting from the performance of medical and related functions by a commissioned Public Health Service Officer acting within the scope of her office).

If Defendant Laino was acting within the scope of his employment as a PHS employee, then Plaintiff's claims against him may be subject to the requirements of the FTCA.  *See* 42 U.S.C. § 233(a); 28 U.S.C. § 2675(a).

The Court in *Rendon v. U.S.A.*, 91 F. Supp. 2d 817, 818 (E.D. Pa. 2000), stated that:

> Under the Public Health Service Act, the United States, in certain circumstances, may "deem" entities and their employees to be a part of the Public Health Services (PHS), thereby bringing the Federal Torts Claims Act  (FTCA).  42 U.S.C. § 233.

> a number of factors bear on an excessive force determination, including:
> "(1) the need for the application of force; (2) the relationship between
> the need and the amount of force that was used; (3) the extent of the
> injury inflicted; (4) the extent of the threat to the safety of staff
> and inmates, as reasonably perceived by responsible officials on
> the basis of facts known to them; and (5) any efforts made to temper
> the severity of the forceful response." *Brooks v. Kyler,* 204 F.3d
> 102, 106 (3d Cir. 2000) (citing *Whitley v. Albers,* 475 U.S. 312, 327,
> 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

*Id.*

> The Court in *Wesley v. Dombrowski*, 2004 WL 1465650 *6 (E.D. Pa.), stated:

> > "The core inquiry in claims of excessive force is 'whether force was
> > applied in a good-faith effort to maintain or restore discipline,
> > or maliciously and sadistically to cause harm'." (Citing *Hudson v.
> > McMillian,* 503 U.S. 1, 7 (1992)).

> The *Wesley* Court also stated:

> > While the Eighth Amendment's proscription against cruel and unusual
> > punishment excludes from constitutional recognition *de minimis* uses of
> > physical force if the use of force is not of a sort "repugnant to the
> > conscience of mankind," to state a claim, the plaintiff need only allege
> > that force was maliciously applied to cause harm." *Id.* (Citation omitted).

*Id.*

Based on the above discussion, we find that Plaintiff has stated an Eighth Amendment excessive

force claim against Defendants Laino, Rasirio and Weidlich. However, we do not find that Plaintiff

has stated a First Amendment retaliation claim against these Defendants with respect to their

alleged inserting an object up Plaintiff's nose.

C. *First Amendment Retaliation Claim*

Plaintiff has asserted a First Amendment retaliation claim against Defendants Laino, Weidlich

and Rasirio, and he claims that they stormed into his cell and stuck an object up his nose that

rendered him unconscious due to the lawsuits he filed against the prison's medical staff.  In *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001), the Court indicated that, as a threshold matter in a retaliation case, the prisoner must show that the conduct which led to the alleged retaliation was constitutionally protected.  Here, liberally construing the *pro se* pleading, Plaintiff meets the threshold requirement of a retaliation claim.  Plaintiff is construed as asserting that the stated three Defendants  retaliated against him for the filing of his  prior complaints against staff members  (Doc. 1, p. 3), which is a First Amendment claim.   In *Rauser*, the Court established a three-step analysis in evaluating a retaliation claim.  "As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected."  *Id*. at 333.  In *Rauser,* the protected right was the prisoner's refusal to participate in a religious program.  In this case, the Plaintiff alleges that the retaliation was based on his First Amendment speech rights.  We find that the Plaintiff has satisfied the first step in the *Rauser* formula with respect to the stated three Defendants.  The constitutional right of an inmate to seek a remedy for his grievances without suffering retaliation was well-established at the time the violations alleged by the Plaintiff occurred in this case.  *See Franco v. Kelly*, 854 F. 2d 584 (2d Cir. 1988).  *See also Morales v. Mackalm*, 278 F. 3d 126, 131 (2d Cir. 2002) (A prisoner's filing of a grievance against a CO is protected by the First Amendment, and retaliation in response to such a grievance is an actionable claim.).

"Next, a prisoner litigating a retaliation claim must show that he suffered some 'adverse action' at the hands of the prison officials."  *Id*.  We view the Plaintiff's claim that the three Defendants forcibly stuck an object up his nose due to his complaints and grievances against the

prison's medical staff to be the adverse action.  (*Id*.).  We find that Plaintiff has not sufficiently alleged that he suffered adverse actions by these three Defendants as a result of his prior civil rights actions.[15]

We take judicial notice that Defendants Weidlich and Rasirio were not parties in Plaintiff's prior actions he filed with this Court.   Defendant Laino was a Defendant named in Plaintiff's cases docketed to Civil Nos. 06-2022 and 06-1698, M.D. Pa.   Further, as noted, all of Plaintiff's prior eight (8) actions filed in the Middle District of Pennsylvania have been closed by this Court well before Plaintiff filed his present action on June 6, 2008, namely 02-0845, 06-2022, 06-2265, 06-1698, 06-1665, 06-1697, 06-2052, and 06-2051, M.D. Pa.   (Doc. 1).  Also, the alleged conduct by the stated three Defendants certainly did not thwart Plaintiff's exercise of his First Amendment rights and his resolve to file actions against prison staff with this Court, since he has been a frequent litigator with this Court who has filed eight previous actions in addition to his present case.  Further, Plaintiff does not claim that any of his eight prior civil rights cases he filed with this Court were adversely affected by the conduct of the stated three Defendants.   Nor does Plaintiff claim that he was in any way prevented from filing his actions with this Court due to the storming into his cell by the stated three Defendants.

Thus, we shall recommend that Plaintiff's First Amendment retaliation claim against all three Defendants, Laino, Weidlich and Rasirio, be dismissed.

---

[15]To establish a retaliation claim, the Plaintiff must also show that there exists a causal nexus between the Plaintiff's constitutionally protected conduct and the adverse action. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

**VII.  Recommendation.**

Based on the above, it is respectfully recommended that Plaintiff's claims under the APA, BOP policies and § 4042 be dismissed. It is recommended that Plaintiff's Fifth Amendment and Fourteenth Amendment claims be dismissed as against all Defendants.  It is recommended that Plaintiff's  retaliation claim under the First Amendment be dismissed as against all Defendants.  It is recommended that Plaintiff's Eighth Amendment conditions of confinement claim with respect to the deprivation of his food trays on one day be dismissed as against all Defendants.  It is recommended that Plaintiff's Eighth Amendment denial of proper medical care claim be allowed to proceed only as against Defendant HSA Laino.  It is recommended that Plaintiff's Eighth Amendment excessive force claim be allowed to proceed only as against Defendants Laino, Weidlich and Rasirio.  It is recommended that Defendants Groover, Dorman and Bryant be dismissed entirely from this case for failure of Plaintiff to state a claim against them.

Finally, it is recommended that this case be remanded to the undersigned for further proceedings with respect to Plaintiff's Eighth Amendment denial of proper medical care claim as against Defendant HSA Laino and Plaintiff's Eighth Amendment excessive force claim as against Defendants Laino, Weidlich and Rasirio.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 30, 2008**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHNNY CYRUS, | : | CIVIL ACTION NO. **4:CV-08-1085** |
| | : | |
| Plaintiff | : | (Judge McClure) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| R. LAINO, et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **June 30, 2008.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                        **s/ Thomas M. Blewitt**

_____

**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: June 30, 2008**